UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

—————————————

In re:

DARRIN CHAUNCEY GAILEY,

       Debtor.

Case No. 23-02132-swd
Chapter 13
Hon. Scott W. Dales

_____/

<u>MEMORANDUM OF DECISION AND ORDER</u>

PRESENT:    HONORABLE SCOTT W. DALES
                    Chief United States Bankruptcy Judge

The court issued its Order to Show Cause dated October 22, 2025 (ECF No. 57, the "Show Cause Order") after Ryan B. Moran, Esq., counsel for chapter 13 debtor Darrin Chauncey Gailey (the "Debtor"), filed a proposed plan amendment purporting to use the court's notice with opportunity to object procedure set forth in LBR 9013(c), but directed creditors to file objections at the wrong address.

Lest it seem hasty, the court did not enter its Show Cause Order until after the Clerk issued a Notice Regarding Filed Document (ECF No. 53, the "Clerk's Notice") calling the error to Mr. Moran's attention.  Mr. Moran, however, forced the court's hand: after entry of the Clerk's Notice, he (1) failed to respond to the Clerk's Notice; (2) filed a certificate of no objection to the proposed amendment; and (3) uploaded a proposed order for the court's signature to approve the improperly prosecuted plan amendment.

And, despite the court's rejection of the proposed second post-confirmation plan amendment through the Show Cause Order, Mr. Moran filed a third post-confirmation plan amendment implicitly treating the second amendment as if it had been approved.  *See* 3rd Amended

Post-Confirmation Chapter 13 Plan (ECF No. 58).  Either Mr. Moran had not read the Show Cause Order carefully (or at all), or he misrepresented it.  It is also conceivable that Mr. Moran was not fully involved in the process, delegating the amendment procedure to his staff.

For further context, the court previously endeavored to address a similar problem in this case involving the first post-confirmation plan amendment by sending a letter to Mr. Moran advising him that "the notices you prepare, file, and serve … should reflect the correct address for court filings (per our website, U.S. Bankruptcy Court, Western District of Michigan, 1 Division Avenue N., Room 200, Grand Rapids, MI 49503)."  *See* Letter from the Hon. Scott W. Dales to Ryan B. Moran, Esq., dated May 23, 2025 (ECF No. 44).  In response, Mr. Moran assured the court that "[w]e have implemented an improved system to monitor and ensure compliance with all court notices and deadlines," hired additional staff, and scheduled training and new procedures "with the goal of eliminating similar errors in the future."  *See* Letter from Ryan B. Moran to the Court dated May 30, 2025 (ECF No. 47).  The Clerk's Notice entered with respect to the second proposed plan amendment shows how carefully Mr. Moran and his firm "implemented an improved system" – not very.

Mr. Moran has not limited his substandard conduct to this case.  After he failed to appear in prosecution of a motion before another judge of this court, the court disciplined him by requiring him to participate in professional ethics education.  *See* Order Regarding Order to Show Cause dated March 26, 2025 (*In re Smith*, ECF No. 46, Case No. 24-01117-jwb (Bankr. W.D. Mich.).

Similarly, in yet another case, after Mr. Moran failed to appear for a Rule 2004 examination of his client, the court issued an Order to Show Cause dated May 30, 2025 (*In re Soerries*, ECF No. 26, Case No. 25-00653-swd (Bankr. W.D. Mich.)), directing him (for the first time) to explain

why the court should not require him to associate with local counsel.  The United States Trustee filed its own motion to sanction Mr. Moran (through disgorgement of fees).  Ultimately, Mr. Moran rebuffed both challenges in the *Soerries* matter with a modest disgorgement and waiver of fees, and without having to associate with local counsel.

The court must also note that on the very morning of the return hearing on the Show Cause Order, Mr. Moran's client in another case, *In re Cook*, Case No. 24-01744-swd (Bankr. W.D. Mich.), attended court to appear at his dismissal hearing because Mr. Moran and his staff did not advise Mr. Cook that the trustee had withdrawn the motion earlier in the week.  Mr. Moran agreed to investigate the circumstances of the miscommunication, and the court sent a separate letter to him regarding this seeming discourtesy to his client.

Additionally, after the hearing, when the court asked the Clerk's staff about the impact of requiring Mr. Moran to associate with local counsel, it learned that Mr. Moran's office is chronically truant in making routine filings, principally Official Form 121 (Statement About Your Social Security Numbers).  Admittedly the court did not raise this concern at the hearing with Mr. Moran (having learned of it afterwards), but it has no reason to doubt the Clerk's report.

To his credit, Mr. Moran appeared at the return hearing in response to the Show Cause Order, but to his demerit he (i) again blamed his staff for the errors in this case (as he did earlier this year), and (ii) noted that his office has not been seeking compensation for post-confirmation amendments anyway.  To paraphrase Mr. Moran's dogged response to the Show Cause Order, "good help is hard to find these days," and "you get what you pay for."  Well, those dogs won't hunt.

First, when lawyers blame their staffs, they blame themselves: Mr. Moran cannot avoid his ethical duty to train and supervise paraprofessionals who prepare filings for his signature. *See* Mich. R. Prof. Conduct 5.3, Official Comment ("A lawyer should give such [paraprofessional] assistants appropriate instruction and supervision concerning the ethical aspects of their employment … and should be responsible for their work product."); *see also* LBR 9011(b)(1) ("Electronic filing of a petition, pleading, motion, proof of claim, or other document by an ECF Filer constitutes the signature of that individual for all purposes, including those under Fed. R. Bankr. P. 9011 and 28 U.S.C. § 1746, and has the same effect as if the individual had affixed that individual's signature on a paper copy of the document being filed."). Second, the ethical obligations of a lawyer to a client and the court do not hinge in any way on counsel's compensation, if any. *See In re Rose*, 561 B.R. 70, 78 (Bankr. W.D. Mich. 2016) ("an attorney's ethical duties exist regardless of whether the attorney is entitled to compensation for compliance with those duties.").

The court acknowledges Mr. Moran's discharge and confirmation success rate in chapter 13 cases in this district over the years, but they do not erase or excuse his recent pattern of inattention to the needs of his clients and the procedural and professional requirements of this court.

With respect to the remedy the court proposed in the Show Cause Order—requiring Mr. Moran to associate with local counsel—he simply minimized the nature of the current offense while pointing to the high percentage of his confirmed plans (according to his unchallenged calculation); he said nothing about the possible hardships or inconvenience of requiring him to affiliate except, perhaps, the additional cost to his clients. On this point, the court assured Mr. Moran that *he* alone would bear that expense, rendering his concern unwarranted. In short, despite

the opportunity, Mr. Moran failed to dissuade the court from requiring him to associate with local counsel.

Mr. Moran's recent approach to the court's concerns in the several cases mentioned above—in word during hearings and in deed beyond the courthouse—has been unsatisfactory, and prompts the court to exercise its discretion under W.D. Mich. L. Gen. 2.4 ("If the law practice of an attorney practicing before the court is not located in proximity to the place where court is held, the court may—in its discretion—require the attorney to designate local counsel.").

The court with this sanction, like all sanctions, will tailor it to meet the problem.  Here, Mr. Moran, whose office is more than two hours away from each of the district's bankruptcy courthouses, has displayed a lack of familiarity with local requirements including forms, procedures, and appearances.  He has ignored the Clerk's efforts to improve his practice (by ignoring the Clerk's notices of defective filings) and paid scant attention to correspondence and orders from the court.

During the return hearing, when the court solicited his views of an appropriate sanction, he suggested that simply answering the court's questions in open court was sanction enough.  The court disagrees.  The Michigan Rules of Professional Conduct put it this way:

> Compliance with the rules, as with all law in an open society, depends primarily upon understanding and voluntary compliance, secondarily upon reinforcement by peer and public opinion, and finally, when necessary, upon enforcement through disciplinary proceedings.

Mich. R. Prof. Conduct 1.0 (Scope).

Mr. Moran's latest offense, in the court's eyes, is strike three.  Indeed, on at least three occasions this year, in open court, the court raised its apprehensions with Mr. Moran, but

regrettably any concern for his own reputation appears insufficient to bring about improvement in training and supervising his support staff, conforming his forms, and following local practices. Requiring him to associate with local bankruptcy counsel may supply local expertise.  It will almost certainly leverage another lawyer's reputational interests—the court will require both lawyers to sign motions, amendments, and other filings—and may provide needed mentorship with the goal of bringing about change in Mr. Moran's practice and office management.  Requiring Mr. Moran to bear the expense of local counsel may also serve as a reminder that the careless practice of law imposes costs on the client—here, in effect, Mr. Moran who will be hiring co-counsel for the incoming lawyer's local expertise, as a cost of doing business in our district over the next several months.

The court's affiliation requirement for Mr. Moran will apply to all cases pending before the undersigned, whether filed before and after today's decision.  Further, because the court does not intend to extend this requirement to cases pending before the court's other judges, and because the Clerk randomly assigns cases (depending on a debtor's county of residence or principal place of business listed on the petition), it is not feasible to require local counsel to sign future petitions and documents simultaneously filed with the petitions.

The court predicts Mr. Moran may require some time to find local counsel, and that he will not welcome the additional expense.  For these reasons, it will postpone the requirement briefly (to give him a chance to affiliate) and will terminate the requirement approximately forty-five days after it begins, assuming Mr. Moran's practice here improves.

If the court were convinced that Mr. Moran was incorrigible and if his offenses were more severe, it would consider referring him to the district court for more robust discipline under the

rules.  The court, however, does not view him in this way.  Instead, he is a talented, perhaps overconfident, practitioner who is attempting to grow his Royal Oak practice by expanding into our district.  By expanding, however, Mr. Moran has been too slow to recognize local requirements and perhaps too quick to avoid attending to matters in person.  He, like many lawyers who represent consumer debtors, faces the pressure of running a small business—time and scheduling constraints, staff training, travel and other expenses, among many challenges.  Unfortunately, even acknowledging past success and hoping for future compliance, the constellation of his recent missteps has captured the Clerk's and the court's attention.  Because the court cannot continue to count on Mr. Moran's knowledge of the rules or his desire to preserve his reputation, alone, relatively modest measures, in the nature of a constructive sanction tethered to the reasons for imposing it, are in order.

NOW, THEREFORE, IT IS HEREBY ORDERED that beginning on December 15, 2025, and ending on January 29, 2026, every motion, amendment, complaint, application, response or other papers (other than voluntary petitions) that Ryan B. Moran, Esq., files in a case or proceeding assigned to the undersigned, shall bear the signature of Mr. Moran and a bankruptcy attorney who maintains an office in close proximity to the courthouses in which intradistrict venue lies under LBR 1014.

IT IS FURTHER ORDERED that the court may extend the local counsel requirement or take other disciplinary action, after notice and a hearing, if the court believes Mr. Moran has not sufficiently addressed the concerns described herein.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon the Debtor,

Ryan B. Moran, Esq., the United States Trustee, and Kurt A. Steinke, Esq., chapter 13 trustee, and

send a courtesy copy to the other judges of this court.


END OF ORDER


**IT IS SO ORDERED.**

**Dated November 12, 2025**



Scott W. Dales
United States Bankruptcy Judge